THE TRUSTEES OF THE CANANDARQUA ACADEMY, Respondent, *v.* JAMES McKECHNIE et al., Appellants.

The O. F. Seminary was incorporated for the purpose of conducting a school for the education of females, and by its charter (Chap. 145, Laws of 1825) it was declared that its funds should " be exclusively devoted to female education." Plaintiff advanced to said seminary $1,000, under a resolution authorizing such advance on condition that when the seminary " shall cease " it shall return that sum on demand, and shall give security for such return on its real estate. As such security, the seminary in 1827 gave a mortgage, which recited the resolution and contained a condition to the effect that " in the event of said seminary ceasing," and if it shall

not pay said sum on demand plaintiff could foreclose, etc. Said seminary subsequently executed another mortgage upon the premises, which was foreclosed and the premises sold, and the seminary thereupon ceased to maintain any school, and has not since exercised any of its franchises ; it was divested, by the sale, of all its real estate, and had thereafter no means to enable it to keep or maintain any school. *Held,* that the seminary had "ceased" within the meaning of the contract, and the contingency had happened upon which plaintiff was entitled to demand the sum advanced; that a formal dissolution of the corporation was not necessary, and that upon refusal to repay the money on demand plaintiff was entitled to foreclose.

The attestation clause of the mortgage stated that the mortgagor had caused it to be signed by its president and sealed with the corporate seal. It was signed by one G., as president, and the corporate seal was attached. The only proof of execution was a certificate of acknowledgment of a commissioner of deeds upon the mortgage made in 1828, which was to the effect that S., the subscribing witness, being sworn, deposed that he knew G., "the person described in and who executed the said deed ;" that he saw G. execute the same, and that the seal affixed was the seminary seal. *Held,* that under the statute then in force (1 R. L., 1813, p. 369, § 1) the certificate was sufficient to prove the execution of the instrument.

S., at the time of the execution of the mortgage, owned three shares of capital stock of the seminary. *Held,* that he was not an interested witness within the meaning of the law then in force, and was competent to prove the execution of the instrument, as he was a witness to establish a claim adverse to his interest.

Where the common seal of a corporation appears to be affixed to an instrument, and the signature thereto of the proper officer is proved, the seal is *prima facie* evidence that it was affixed by proper authority.

An authority to take acknowledgment of deeds authorizes the acknowledgment of mortgages.

(Argued December 15, 1882; decided December 28, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made the second Monday of June, 1881, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought to foreclose a mortgage, the material portions of which are as follows: "This indenture, made this 4th day of December, in the year of our Lord one thousand eight hundred and twenty-seven, between

the Ontario Female Seminary of the first part and the Trustees of the Canandarqua Academy of the second part, witnesseth: that said party of the first part, for and in consideration of the sum of ($1,000) one thousand dollars to them paid by said party of the second part, the receipt whereof is hereby confessed and acknowledged, have granted, bargained, sold, etc." "Provided, always, and these presents are upon the express condition, whereas, the said party of the second part did, on the 20th December, in the year of our Lord one thousand eight hundred and twenty-four, resolve as follows: 'That the sum of one thousand dollars out of the first moneys that shall be realized from any lands belonging to the said party of the second part in number 8 in the 4th range, number 8 in the 5th range and number 10 in the 5th range, to be appropriated to the Ontario Female Seminary, to be applied to the business of that institution on the conditions that, when the Ontario Female Seminary shall cease, the said sum of one thousand dollars shall be returned on demand; and security to return it, in that event, shall be given on the lot and buildings belonging to the said seminary.' Now, if, in the event of the said seminary ceasing, the said party of the first part shall not pay to the said party of the second part, their successors in office or assigns, the said sum of one thousand dollars on demand, then, and in such case, it shall and may be lawful for said party of the second part, their successors in office or assigns, and the said party of the first part does hereby empower and authorize the said party of the second part, their successors in office or assigns, to grant, bargain, sell, release and convey said premises, or any part or portion thereof, with the appurtenances, at public auction or vendue, and upon such sale to make and execute to the purchaser or purchasers, his or their heirs and assigns forever, a good, ample and sufficient deed or deeds of conveyance in law pursuant to the statute in that case made and provided, rendering the surplus moneys (if any there shall be) to the said party of the first part, their successors in office or their assigns, after deducting the costs and charges of such vendue and sale aforesaid.

" In witness whereof, the parties of the first part have caused these presents to be signed by their president and sealed with their corporate seal the day and year first above written.

"JOHN GREIG, [SEAL.]<br>" <em>Prest.</em>

" Sealed and delivered in presence of Mark H. Sibley.

" ONTARIO COUNTY, *ss.* :

" On the 24th day of April, 1828, before me, a commissioner of said county to take the acknowledgment of deeds, etc., comes Mark H. Sibley, to me known to be the subscribing witness to the foregoing deed, and who being by me duly sworn, deposes that he knows John Greig, the person described in and who has executed the said deed, and that he saw the said John Greig execute the same, and that the seal thereunto affixed is the seal of the Ontario Female Seminary.

" J. CHIPMAN."

The material facts are stated in the opinion.

*Henry M. Field* for appellants.   The words of the resolution passed by respondent in December, 1824, incorporated in the mortgage " to be applied to the objects of that institution," have no force except as a preamble or recital, and are not in fact any part of the contract. (2 Bacon's Abridgment, 280 ; 4 Kent's Com. 130; *Woodworth* v. *Payne,* 5 Hun, 551 ; 74 N. Y. 196.)   A recital cannot control the plain words of the body of the deed. (*Huntington* v. *Havens,* 5 Johns. Ch. 23 ; Gerard's Real Estate, § 513.)   A cause of forfeiture cannot be taken advantage of or enforced against a corporation collaterally or incidentally, or in any other way than by a direct proceeding for that purpose. (*Alcott* v. *Byman,* 17 Wall. 58 ; *Kinnear* v. *Dunnell,* 59 N. Y. 548 ; *Philip* v. *Wickham,* 1 Paige, 597; *Matter of N. Y. El. R. R. Co.,* 70 N. Y. 327 ; *People* v. *A. R. R. Co.,* 24 id. 261; *Tower* v. *Hale,* 46 Barb. 361; *People, etc.,* v. *Manhattan Co.,* 9 Wend. 351 ; *Denike* v. *Lime and Cement Co.,* 80 N. Y. 599.)   If there had been a sale of all the property of the seminary to pay its debts; even if

there had been included all its tangible and visible property, and a temporary suspension, that would not involve a surrender of its franchises, so long as it has legal capacity to do business. (Field on Corporations, §§ 456–482 ; *Brinkerhoff* v. *Brown,* 7 Johns. Ch. 217; *Barclay* v. *Totman,* 4 Edw. Ch. 123; *People* v. *K. L. Turnpike Co.,* 44 Barb. 239 ; *Penniman* v. *Briggs,* 1 Hopk. Ch. 300; *Briggs* v. *Penniman,* 8 Cow. 387 ; *Slee* v. *Bloom,* 19 Johns. 456.) Acts ·of a corporation when challenged are to be proved in the same way as acts of individuals, and there are no more presumptions in favor of the acts of the agents of a corporation than the acts of agents of individuals. (*Moss* v. *Averill,* 6 Seld. 449 ; *Hoyt* v. *Thompson,* 1 id. 321; Field on Corporations, §§ 288, 291; *Jackson* v. *Campbell,* 5 Wend. 572; *Mayor of London* v. *Charlton,* 6 M. & W. 815 ; *Litchfield Iron Co.* v. *Bennett,* 7 Cow. 234; *Hoyt* v. *Thompson,* 1 Seld. 320 ; *Beall* v. *Marine Ins. Co.,* 2 id. 108 ; *Presdt., etc.,* v. *Mechanics' F. Ins. Co.,* 7 Wend. 31.) The subscribing witness, M. H. Sibley, was not a competent witness to prove the execution of the paper, it being admitted that at the date of mortgage and proof, he was the owner of three shares of the capital stock of the seminary, and one of its trustees. (*Park* v. *Mayor, etc.,* 3 Comst. 489 ; *Goodhue* v. *Berrien,* 11 Sandf. Ch. 630; *Muller* v. *Keep,* 1 Paige, 601; *State* v. *Catskill Bk.,* 18 Wend. 465 ; Greenleaf on Evidence, § 333; Laws of 1825, chap. 149 ; 2 R. S. [6th ed.] 1146, § 35; 1 id. 369, § 5; *Jackson* v. *Perkins,* 2 Wend. 308 ; *Jackson* v. *Schoonmaker,* 4 Johns. 161; *Holdfast* v. *Downing,* 2 Strange, 253 ; *Day* v. *Adams,* 42 Vt. 510.) The mortgage was not proved or acknowledged in the manner required by law, and the clerk of Ontario county had no legal right to record it. (Laws of 1797, chap. 18, p. 218; Laws of 1798, chap. 78; R. S. of 1813, pp. 369, 372 ; Laws of 1819, p. 269; Laws of 1822, pp. 261– 284; Laws of 1823, p. 412; 1 R. S. [Edmonds' ed.], chap. 3, § 37, p. 714 ; id. 762, chap. 363, p. 412; Gerard's Titles to Real Estate, 588; 1 R. S. 369, §§ 1, 2, 4, 12, p. 758 ; *Dibble* v. *Rogers,* 13 Wend. 536; *Rawson* v. *Shepard,* 2 Johns. 76;

*Jackson* v. *Cody*, 8 id. 128 ; *Gibbs* v. *Osborne*, 2 Wend. 555; *Watson, Exr.,* v. *Campbell*, 28 Barb. 421 ; *Gillett* v. *Stanley*, 1 Hill, 121 ; *Miller* v. *Link*, 2 T. & C. 86 ; *Peck* v. *Mallams*, 10 N. Y. 509 ; *Fryer* v. *Rockefeller*, 63 id. 268 ; *Campbell* v. *Hoyt*, 23 Barb. 554 ; *Wood* v. *Winans*, 1 Comst. 77 ; *Mann, Rec'r*, v. *Pentz*, 2 Sandf. Ch. 272 ; *Nat. Bk.* v. *Norton*, 1 Hill, 572 ; *Hoyt* v. *Thompson*, 1 Seld. 320 ; Field on Corporations, §§ 226, 247 ; *Johnson* v. *Bush*, 3 Barb. Ch. 207.)

*Thomas M. Howell* for respondent. The requirements of the Revised Statutes having been substantially complied with in the certificate it is sufficient. (*Jackson* v. *Gumaer*, 2 Cow. 552, 567 ; *Troup* v. *Haight*, Hopk. Ch. 239, 267 ; *Duval* v. *Covenhoven*, 4 Wend. 561 ; *Thurman* v. *Cameron*, 24 id. 87, 91 ; *Mariam* v. *Harsen*, 4 Edw. Ch. 70, 74, 75 ; *West Point Iron Co.* v. *Remert*, 45 N. Y. 703 ; *Chanwin* v. *Wagner*, 18 Mo. 531 ; *McIntyre* v. *Ward*, 5 Binn. [Penn.] 296 ; *Mantz* v. *Bailey*, 3 Dana [Ky.], 111 ; *Barton* v. *Morris*, 16 Ohio, 408 ; *Cummings* v. *Lane*, 11 Ill. 123.) A substantial compliance with the act on the subject of acknowledgment or proof is sufficient, without a minute attention to form. (*Sharp* v. *Hamilton*, 7 Halst. [N. J.] 110 ; *Vance* v. *Schuyler*, 1 Gilm. [Ill.] 160.) The seal of a corporation, affixed to an instrument, is of itself *prima facie* evidence that it was so affixed by authority of the corporation ; it lies with the party objecting to the due execution of the instrument, to show that the corporate seal was affixed to it surreptitiously or improperly. The same holds good in regard to the signature of the president. (*Lovette* v. *The Steam Saw-Mill Assn.*, 6 Paige's Ch. 54 ; *Flint* v. *Clinton Co.*, 12 N. H. 430 ; *Chouquette* v. *Barada*, 28 Mo. 491; *Bk. of U. S.* v. *Dandridge*, 12 Wheat. 70.) The attestation clause of the mortgage is sufficient. (*Haven* v. *Adams*, 4 Allen [Mass.], 80 ; *Osborn* v. *Tunis*, 1 Dutcher [N. J.], 633, 661 ; *C. & C. C. D. Co.* v. *Russell*, 68 Ill. 426; 4 Edw. Ch. 75 ; *Jackson* v. *Gilchrist*, 15 Johns. 111.) The subscribing witness to the mortgage, although a stockholder, was a competent witness to prove its execution. (1 Green-

leaf on Evidence, §§ 329, 333.) When an integral part of a corporation is gone, without whose existence the functions of the corporation cannot be exercised, and the corporation has no means of supplying that integral part, it is dissolved for certain purposes. (3 Durnf. & East, 241; 2 Kent's Com. 309.) The Ontario Female Seminary by allowing its lots and buildings to be sold, and pass into the possession of strangers on the 5th of February, 1876, suffered an act to be done which destroyed the end and object for which it was instituted, and it was equivalent to a surrender of its rights, and the corporation was dissolved as regards creditors. (*Slee* v. *Bloom,* 19 Johns. 456; *Briggs* v. *Penniman,* 8 Cow. 387; *Bradt* v. *Benedict,* 17 N. Y. 93; *Bk. of Poughkeepsie* v. *Ibboston,* 24 Wend. 473.)

TRACY, J. The principal question to be determined in this case is whether the event, upon which the mortgage given by the Ontario Female Seminary was to become due and payable, has happened?

It is insisted by the appellant that the right to demand the money upon the mortgage does not accrue until the Ontario Female Seminary as a corporation shall be dissolved and cease to exist.

By the respondent it is contended that the right to demand the money upon the mortgage accrued whenever the corporation should cease to devote its funds and its seminary building, mentioned and described in the mortgage, to the maintenance of a school for the education of females.

The Ontario Female Seminary was incorporated by chapter 149 of the Laws of 1825. The act of incorporation declared that "the funds of the corporation and their seminary shall be exclusively devoted to female education, and no male scholar shall be admitted therein."

On the 20th of December, 1824, the plaintiff passed the following resolution: "*Resolved,* That the sum of $1,000 * * * be appropriated to the Ontario Female Seminary to be applied to the business of that institution, on the conditions

that when the Ontario Female Seminary shall cease the said sum of $1,000 shall be returned on demand, and security to return it in that event shall be given on the lot and buildings belonging to said seminary." The money was advanced in pursuance of the resolution, which was incorporated in the mortgage given by the Ontario Female Seminary on the 4th of December, 1827. After reciting the resolution the mortgage then declares : " Now, if, in the event of said seminary ceasing, the said party of the first part shall not pay to said party of the second part, their successors or assigns in office, the said sum of $1,000, then and in such case it shall and may be lawful for said party of the second part, their successors in office, or assigns to, etc." On the 1st of July, 1854, the Ontario Female Seminary made a second mortgage on the same premises for $18,000, to one Benjamin Richards. In July, 1867, Richards assigned this mortgage to the defendants. This second mortgage was subsequently foreclosed by the defendants, and they purchased the property upon the sale ; the referee's deed to them bearing date February 5, 1876. The referee to whom the case was referred finds " that on the 5th day of February, 1876, the Ontario Female Seminary ceased either itself or by its agents to keep and maintain any school or seminary of learning whatever, either on the mortgaged premises or elsewhere, and has not since that time kept or maintained any such school or seminary, nor has it any means whatever to enable it to keep or maintain any such school or seminary. That the Ontario Female Seminary has not, since the 5th day of February, 1876, in any manner exercised, or used any of the franchises granted to it by the law under which it was organized ; but no direct proceedings have been had or taken in any way to dissolve said corporation. That by the sale of said mortgaged premises the Ontario Female Seminary was divested of all real estate it then owned, or had any interest in, and that it was not then the owner of any personal property, except the remnant of an old library, worth not to exceed $200 ; and that it has not since said 5th day of February, 1876, had or owned, or

SICKELS—VOL. XLV.    79

had any interest in any real or personal estate, except the remnant of the old library aforesaid.

We think the position taken by the appellant, that the plaintiff had no right to demand the money upon the mortgage until after the dissolution of the corporation is not well taken. The resolution recites that the $1,000 " be appropriated to the Ontario Female Seminary, to be applied to the business of that institution, on the conditions that when the Ontario Female Seminary shall cease, the said sum of $1,000 shall be returned on demand." It is manifest that the intent of this resolution was that when the Female Seminary should cease to carry on the business to which this money was to be applied, the money was to be returned. But it is insisted that this resolution, although embodied in the mortgage, constitutes no part of the contract, and can have no force except as a preamble or recital, and that as such it cannot control the plain words of the body of the deed. But a preamble or recital is often an aid to the construction of a written instrument, and it is declared in the mortgage immediately following the resolution: " Now if in the event of the said seminary ceasing, the said party of the first part shall not pay," etc. The same meaning which attaches to the phrase ' seminary shall cease," found in the resolution, must also be attached to the words " seminary ceasing," found in the body of the contract. The seminary was incorporated for the sole purpose of conducting a school for the education of females. Under its charter it possessed no other franchise, and could transact no business, except such as was incident to the proper enjoyment of such franchise. It was the object and purpose of this loan to aid it in the carrying on of such business. So long as the business was continued the loan could remain. When the corporation ceased to keep and maintain a female school or seminary of learning, or to exercise the franchise conferred by the act under which it was incorporated, and had no longer the means to enable it further to perform the duties devolving upon it as a corporation, we think the seminary ceased within the meaning of the contract, and the contingency upon which the plaintiff was

at liberty to demand the money loaned had occurred. Had the parties intended to make the right of the plaintiff to demand the repayment of the money dependent upon the dissolution of the corporation, other and different language would have been used. We think the breach of the condition of the mortgage is well pleaded in the complaint, and that no error was committed by the referee.

As the referee found that the defendants had no actual knowledge of the plaintiff's mortgage, it becomes important to consider whether it was properly recorded. If it was not, it was not notice to the defendants, and their title acquired under the second mortgage would be prior and paramount to the plaintiff's lien.

The appellant's counsel insists that the certificate of acknowledgment of the execution of the mortgage by the Ontario Female Seminary was insufficient, and the mortgage was not, therefore, properly recorded. The mortgage is signed by John Greig, president, with the seal of the corporation attached. The only proof produced of the execution of the mortgage is found in the certificate of the commissioner of deeds. The execution was proved on the 24th day of April, 1828, by Mark H. Sibley, a subscribing witness thereto, and is as follows:

" Ontario County, *ss.:*

" On the 24th day of April, 1828, before me, a commissioner of said county to take the acknowledgment of deeds, etc., comes Mark H. Sibley, to me known to be the subscribing witness to the foregoing deed, and who, being by me duly sworn, deposes that he knows John Greig, the person described in, and who has executed said deed, and that he saw the said John Greig execute the same, and that the seal thereto affixed is the seal of the Ontario Female Seminary.

" (Signed.) J. CHIPMAN."

The sufficiency of the proof of the execution must be determined by the law in force at the time it was taken. (*Peck* v. *Mallans*, 10 N. Y. 539 ; *Fort* v. *Burch*, 6 Barb. 60.) By the law in force at the time of this acknowledgment, it was pro-

vided that no such proof shall be taken, unless the officer taking the same shall know the person making such proof, or have satisfactory evidence that he is a subscribing witness to such deed, conveyance, or writing, and that such witness knows the person who executed the same, all of which shall be inserted in the said certificate of such acknowledgment or proof. (1 Rev. Laws, 1813, § 1, p. 369.) We are unable to see wherein the certificate in this case fails to comply with the law then in force. Mark H. Sibley was a subscribing witness. The commissioner of deeds certified that he knew him to be such subscribing witness, and that the witness, being duly sworn, deposed that he knew John Greig, the person described in and who executed the said deed, and that he saw the said John Greig execute the same, and that the seal thereunto affixed is the seal of the Ontario Female Seminary.

The attestation clause of the mortgage is in these words : " In witness whereof the parties of the first part have caused these presents to be signed by their president, and sealed with their corporate seal, the day and year first above written." And the mortgage is signed by John Greig, president. If it were necessary for the certificate to show that the subscribing witness testified that he knew Greig to be the president of the company, we think that this fact may be within the fair interpretation of his testimony, as contained in the certificate. John Greig is described in the attestation clause as president, and the witness says he knows John Greig, the person described in and who executed the deed, and he saw him execute the same. It would be too technical to say that this does not mean that he knew him to be the president, as therein described. We think the certificate a substantial compliance with the statute of 1813, and that is sufficient. (*Jackson's Ex'r, etc.,* v. *Gumaer,* 2 Cow. 552 ; *Troup* v. *Haight,* Hopk. Ch. 239 ; *Duval* v. *Covenhoven,* 4 Wend. 561 ; *Meriam* v. *Harsen,* 4 Edw. Ch. 70 ; *McIntire* v. *Ward,* 5 Binney, 296 ; *West Point Iron Co.* v. *Reymert,* 45 N. Y. 703.)

It is further objected that it does not appear that Greig, the president, had been authorized by the corporation to execute

the mortgage. The attestation clause recites that " the parties of the first part have caused these presents to be signed by their president, and sealed with their corporate seal." "Where the common seal of a corporation appears to be affixed to an instrument, and the signatures of the proper officers are proved, the courts are to presume that the officers did not exceed their authority, and the seal itself is *prima facie* evidence that it was affixed by proper authority." (Angell and Ames on Corporations, § 224; *Osborne* v. *Tunis*, 1 Dutch. [N. J.] 633; *Lovett* v. *Steam Saw-Mill Assn.*, 6 Paige's Ch. 54; *Flint* v. *Clinton Co. Trustees*, 12 N. H. 430; *Chouquette* v. *Barada*, 28 Mo. 491; *Bank of the United States* v. *Dandridge*, 12 Wheat. opinion, 70.) "The certificate of the acknowledgment of a deed is received without proof of the official character of the officer granting it." (*Thurman* v. *Cameron*, 24 Wend. 91, 92.) The contrary must be shown by the objecting party. At the time of the acknowledgment of this mortgage the law did not require the subscribing witness to state the place of his residence, this requirement being first introduced in the Revised Statutes, which took effect January 1, 1830. (1 R. S., § 12, p. 758.) This certificate, being a substantial compliance with the statute, would be valid even if not in the exact words of the statute.

There is no force in the objection that Chipman was authorized to take the acknowledgment of deeds, but not of mortgages. A mortgage is a deed with a condition; being a mortgage-deed it was properly recorded in the book of mortgages.

The fact that Sibley, at the time of the execution of the mortgage, was the owner of three shares of capital stock of the seminary, did not render him an incompetent witness to prove the execution of the paper. He was not an interested witness within the meaning of the statute. He was a witness to establish a claim *against* the corporation, and, therefore, adverse to his interest. It was never a valid objection to a witness that he was interested, when he was called to testify adversely to such interest. And, finally, it is insisted that the action can-

not be maintained, because the complaint does not allege the plaintiff to be a corporation. The plaintiff sued as a corporation, and the answer does not contain an affirmative allegation that the plaintiff is not a corporation. Without such an allegation in the answer proof of the corporate existence of the plaintiff was unnecessary. (2 R. S. 458, § 3; *Bank of Genesee* v. *The Patchin Bank,* 13 N. Y. 309; *Stoddard et al.* v. *Onondaga Annual Conference of the Methodist Protestant Church,* 12 Barb. 573; *Waterville Manufacturing Co.* v. *Bryan & Brown,* 14 id. 182.) The plaintiff sued as a corporation. If an averment that it was a corporation was necessary the defect appeared upon the face of the complaint, and the objection should have been taken either by demurrer or answer. A mere denial that there is any corporation or corporate body known as The Trustees of the Canandarqua Academy raises no issue. The defect is not one of substance. (12 Barb., *supra.*) This action was commenced before section 1775 of the present Code went into effect, and the complaint was not required to conform to its provisions.

The judgment should be affirmed, with costs.

All concur, except RAPALLO, J., absent.

Judgment affirmed.